IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| LAMAR JOHNSON | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:13-CV-143 (CAR) |
| | : | |
| | : | |
| UNIFIED GOVERNMENT OF | : | |
| ATHENS-CLARKE COUNTY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lamar Johnson, proceeding *pro se*, brings this employment discrimination action contending his former employer, Defendant Unified Government of Athens-Clarke County (the County), discharged him based on his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. (ADEA). Before the Court is Defendant's Motion for Summary Judgment. Having fully considered this matter, the Court **GRANTS** Defendant's Motion [Doc. 31].

**LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any

1

material fact and the movant is entitled to judgment as a matter of law."[1] A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2] Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3] When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5] If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing there is a genuine issue of material fact.[6] This evidence must consist of more than mere conclusory allegations or legal conclusions.[7] If the adverse party does not so respond, summary judgment shall be

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[3] *See id.* at 249-52.
[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).
[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[7] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[8]

Because Plaintiff is proceeding *pro se*, the Court must afford him wide latitude when construing his pleadings and papers.[9] Even so, a *pro se* litigant is not exempt from complying with relevant rules of procedural and substantive law.[10] Nor does this latitude given to *pro se* litigants require the Court to re-write a deficient complaint.[11]

## BACKGROUND

For over 35 years, Plaintiff worked for Defendant as a computer operator in its Computer Information Services (CIS) Department, until Defendant eliminated his position pursuant to a reduction in force. At that time, Plaintiff was 57 years old and five years from receiving full retirement benefits. Plaintiff contends Defendant eliminated his position and refused to rehire him because of his age, in violation of the ADEA. Defendant counters Plaintiff's position was eliminated for budgetary reasons, and he was not qualified for the open positions for which he applied. The facts, taken in the light most favorable to Plaintiff as the nonmoving party, are as follows:

After Plaintiff graduated from high school in 1974, he immediately entered the

---

[8] Fed. R. Civ. P. 56(a).
[9] *See SEC v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").
[10] *See Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999).
[11] *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) (noting lack of any reference in complaint to actual injury and inherent vagueness in pleading terms like "due process" without further elaboration).

Army and served as a medic. After his discharge from the Army in 1975, Plaintiff attended Athens Technical College for one year where he obtained a certificate as a computer technician. In 1976, Defendant hired Plaintiff as a computer operator in its CIS department.[12] For the first 14 years of his employment, Plaintiff worked in the Computer Operator I position. He received a promotion in 1990 to Computer Operator II, the position he held for the next 22 years, until it was eliminated on December 31, 2012.

As a Computer Operator II, Plaintiff's main responsibilities involved the physical removal, replacement, categorization, restoration, and maintenance of the back-up tapes that stored electronic information from various governmental departments, including the police department, voter registration department, and tax assessor's office.[13] For example, Plaintiff would physically retrieve back-up tapes from a government agency, replace those tapes, categorize those tapes, and then place the tapes in the tape library, which he maintained. Plaintiff's job involved computer hardware; it did not involve installing software, performing computer system configurations, modifying existing software, or training users on software. Plaintiff acknowledges he did not know how to troubleshoot or solve problems in the area of computer software.[14]

Every year the County must pass an operating budget. In November 2011, the

---

[12] At the time Plaintiff was hired, the government of Athens-Clarke County was not consolidated. Thus, Plaintiff worked for Clarke County until the consolidation.
[13] Pl. Depo., pp. 34-36 [Doc. 33].
[14] *Id.* at pp. 65-68.

County began formulating an operating budget for the 2013 fiscal year (FY13). On November 11, 2011, Government Manager Alan Reddish sent a memorandum to all department directors directing them to prepare budget requests for FY13. All departments, including the CIS department where Plaintiff worked, were required to provide a target budget which would equal the department's previous year's budget, as well as a separate budget proposal identifying service reductions equal to 5% of the department's total target budget, including personnel and non-personnel costs.[15]

As requested, CIS Department Director Lanny Robinson submitted a budget proposal containing a 5% reduction. Robinson listed Plaintiff's Computer Operator II position as one of the items to be eliminated because Plaintiff's main job responsibilities were becoming obsolete. Robinson stated,

> At that point, [Defendant] was in the process of changing from the existing system where [Plaintiff] would physically install and remove tapes on a daily basis. Instead, a new system was being installed which was being digitized so that the electronically stored information was being moved off site automatically. That system, when fully implemented, would eliminate the need for the labor required in order to install and remove backup tapes on a daily basis.[16]

In his budget submission, Robinson outlined how eliminating Plaintiff's position would impact the delivery of governmental services. Certain duties would have to be assumed by other positions. The PC Technician would assume the duties of receiving computer

---

[15] Memorandum from Alan Reddish dated Nov. 18, 2011 [Doc. 31, p. 10].
[16] Robinson declaration, ¶6, p. 10 [Doc. 31, p. 29].

equipment and maintaining the main and remote computer rooms. The Security and Recovery Analyst would assume the duties regarding the physical rotation and preparation of backup tapes in remote locations where an automatic backup system was not feasible. Ultimately, however, Plaintiff's main duties would be eliminated, and Robinson believed eliminating Plaintiff's position and an agreement with Microsoft "were the only realistic options to submit a reduced budget without cutting services to a totally unacceptable level."[17]

After receiving all of the government departments' budgetary submissions, the County Manager prepared a proposed balanced budget to the Mayor. The Manager initially proposed no reductions in expenditures but did propose an increase in the millage rate to balance the budget. The Mayor did not want an increase in the millage rate. The Mayor's final recommended budget to the Athens-Clarke County Commission (the Commission) included certain cuts, but the elimination of Plaintiff's Computer Operator II position was not one of them. Ultimately, however, the Commission adopted a recommended budget eliminating Plaintiff's position, along with several others.

At the end of May 2012, CIS Department Director Robinson met with Plaintiff and informed him his position would likely be abolished by the County Commissioners.[18] About a week later, on June 7, 2012, Robinson gave Plaintiff official notice his position as

---

[17] *Id.*
[18] Pl. Depo., pp. 41-42.

Computer Operator II was being abolished due to decisions made regarding the FY13 budget. The notice informed Plaintiff the effective date of the action was October 1, 2012, and to contact Jeff Hale in the Department of Human Resources within five days "for purposes of determining if [Plaintiff's] education and work experience would be a match for any current vacant position[s] within Athens-Clarke County government."[19] Two days later, Plaintiff met with Hale and personally delivered notice he wanted to be considered for alternative employment.[20] Plaintiff made it clear to Hale he only had five years before he was eligible for full retirement and thus would work in any position to continue employment with the County.[21] Hale explained to Plaintiff he would need to apply for an open position, and if he was qualified, his application would be considered a priority because his position was being abolished.[22]

On June 26, 2012, Plaintiff applied for a Systems Analyst I position in the CIS Department. This position included designing, modifying, and writing database extraction programs, managing software usage, and training users.[23] The minimum training required for this position was a bachelor's degree in computer science, information systems, or a related field or any equivalent combination of education,

---

[19] Job Abolishment Notice, dated June 7, 2012 [Doc. 31, p. 33].
[20] Pl. Depo., pp. 54-55.
[21] *Id.* at 55-56.
[22] *Id.* at 56, 60.
[23] Job Posting Systems Analyst I Computer Information Services [Doc. 31, pp. 45-48].

training, and experience.[24] A systems analyst was required to perform maintenance on existing software programs, troubleshoot and remediate software problems, and consult with outside engineers.[25]

Defendant did not hire Plaintiff for a Systems Analyst I position. Instead, in July 2012, Defendant hired Patti Henry and Julia Dalton. Henry held a bachelor's degree in Information Systems from Georgia State University and had approximately 19 years' experience working with computer software, including work as a programmer and analyst.[26] Dalton held a bachelor's degree from the University of Georgia and had experience in multi-user environments, including experience in Query building and Microsoft SQL.[27] In October 2012, Defendant hired another systems analyst, Ryan Landreth, who held a bachelor's degree in Management Information Systems from the University of Georgia and had multiple years' experience with information technology systems.[28] Although the record does not reflect their exact ages, it appears Henry, Dalton, and Landreth were younger than 40 years of age.

On July 2, 2012, Plaintiff applied for a Records Technician position with the Police Department. This position required two years of general office experience involving records management and administration experience. The Police Department, however,

---

[24] *Id.* at pp. 46-47.
[25] *Id.* at p. 46.
[26] Application for Employment, Patti Henry [Doc. 31, pp. 67-76].
[27] Application for Employment, Julia Dalton [Doc. 31, pp. 78-88].
[28] Application for Employment, Ryan Landreth [Doc. 31, pp. 89-100].

cancelled the posting shortly after the job was posted, and no one was employed to fill the position at that time.

In September, CIS Department Director Robinson again met with Plaintiff and informed him the abolishment of his Computer Operator II position was being postponed until December 31, 2012. Robinson mentioned several County departments he thought had open positions where Plaintiff would "be a good fit," including the Leisure Services Department and the Finance Department.[29] Plaintiff told Robinson he only had five years until he was eligible for full retirement, so he would work in any department. On September 24, 2012, Plaintiff received official notice the effective date of the elimination of his position had been changed from October 1, 2012, to December 31, 2012. The letter again informed Plaintiff he needed to contact Jeff Hale in Human Resources if he wanted to be considered for other employment in Athens-Clarke County.[30] Plaintiff contacted Hale, and Hale counseled Plaintiff on the process of applying for a vacant position.

On December 19, 2012, Plaintiff applied for two positions: Program Specialist in the Department of Leisure Services and Systems Analyst II in the CIS Department. The Program Specialist is responsible for developing, supervising, and evaluating programs,

---

[29] Pl. Depo., pp. 47-48.
[30] Job Abolishment Notice-Change, dated September 24, 2012 [Doc. 31, p. 34].

instructing classes for the Department of Leisure Services.[31] The minimum qualifications for the position are a bachelor's degree in a course of study related to the occupational field, with one year of related experience or any equivalent combination of education, training, and experience.[32] Defendant did not hire Plaintiff. Instead, in February 2013, Defendant hired Tara Cash, who held a four-year degree in Environmental Sciences from Gainesville State College and had in excess of ten years' experience working at Sandy Creek Nature Center and Elachee Nature Center Camp, where she taught various age groups at differing camps.[33]

The Systems Analyst II position included designing, modifying, and configuring hardware and software usage, and training operators and users.[34] Like the Systems Analyst I position Plaintiff had earlier applied for, the minimum training required was a bachelor's degree in computer science, information systems, or a related filed or any equivalent combination of education, training, and experience.[35] The systems analysts were required to perform maintenance on existing software programs, troubleshoot and remediate software problems, and consult with outside engineers.[36] Again, Defendant did not hire Plaintiff for this position. In March 2013, Defendant hired Matt Billings who held a bachelor's degree from Emory University and had over 15 years' experience in the

---

[31] Job Posting Program Specialist Leisure Services, [Doc. 31, pp. 56-61].
[32] *Id.*
[33] *Id.* at pp. 115-136.
[34] Job Posting Systems Analyst II Computer Information Services [Doc. 31, pp. 49-55].
[35] *Id.* at p. 53.
[36] *Id.*

computer field, including experience focused on usage and implementation of software.[37]

After Plaintiff's Computer Operator II position was officially abolished on December 31, 2012, and Plaintiff was not rehired with the County, Plaintiff filed suit claiming Defendant unlawfully discriminated against him based on his age, in violation of ADEA. The County brings the current Motion seeking summary judgment on Plaintiff's claims.

## DISCUSSION

Plaintiff brings two claims under the ADEA: (1) Defendant unlawfully eliminated his position based on his age, and (2) Defendant failed to employ him in an alternative position because of his age. The ADEA's purpose is "to promote employment of older persons based on their ability rather than age,"[38] and it prohibits certain actions by an employer, including the termination of, or deprivation of employment opportunities against, an employee who is at least 40 years old because of that employee's age.[39]

A plaintiff may support a claim under the ADEA through either direct or circumstantial evidence.[40] To ultimately prevail, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the

---

[37] Application for Employment, Matt Billings [Doc. 31, pp. 101-114].
[38] 29 U.S.C. § 621(b).
[39] *See id.* at § 623(a)(1)-(2), 631(a).
[40] *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010).

'but-for' cause of the challenged employer decision."[41] Where, as here, a plaintiff proffers circumstantial evidence to establish an ADEA claim, the Court applies the burden-shifting framework established in *McDonnell Douglas*.[42]

First, a plaintiff must establish a *prima facie* case of age discrimination.[43] To establish a *prima facie* case under the ADEA, a plaintiff must show he was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual.[44] In situations involving a reduction in force (RIF), however, the employer seldom seeks a replacement for the discharged employee. Accordingly, the fourth prong of the prima facie case is altered to require that the plaintiff "produce evidence, circumstantial or direct, from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."[45] To establish the requisite discriminatory intent, the plaintiff must present evidence that could lead a reasonable factfinder to conclude that (1) the defendant consciously refused to consider retaining or relocating plaintiff because of his age, or (2) the defendant regarded age as a negative

---

[41] *Goss v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).
[42] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792; *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013) (explaining how the burden-shifting framework for circumstantial evidence remains consistent with the Supreme Court's decision in *Gross*).
[43] *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).
[44] *Chapman*, 229 F.3d at 1024.
[45] *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987) (citation omitted).

factor in its actions.[46]

If Plaintiff establishes a *prima facie* case, the burden of production shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the challenged employment action."[47] If the defendant articulates at least one such reason, the plaintiff is then given the opportunity to show the employer's stated reason is merely a pretext for discrimination.[48] In order to show pretext, the plaintiff must show both that the employer's explanation was false, and that discrimination was the real reason for its decision.[49] The plaintiff may succeed in this either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing the employer's proffered explanation is unworthy of credence.[50] In doing so, a plaintiff can point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered explanations"; however, the employee cannot succeed by simply quarreling with the wisdom of that reason.[51] Indeed, "a plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by discriminatory animus."[52] Ultimately, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no

---

[46] *Jones v. BE&K Eng'g Co.*, 146 F. App'x. 356, 359 (11th Cir. 2005) (citing *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003)).
[47] *Id.*
[48] *Chapman*, 229 F.3d at 1024.
[49] *Brooks v. Cnty. Com'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks and citation omitted.).
[50] *Dulaney v. Miami-Dade Cnty.*, 481 F. App'x 486, 489 (11th Cir. 2012).
[51] *Id.* (internal quotation marks and citation omitted).
[52] *Id.* (citation omitted).

reason at all, as long as its action is not for a discriminatory reason."[53] The defendant is entitled to summary judgment if the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether defendant's proffered reason is pretextual.[54]

Here, even assuming Plaintiff could establish a *prima facie* case of age discrimination on both of his claims, the record contains no evidence of pretext to rebut Defendant's legitimate, nondiscriminatory explanations for the elimination of his position—budgetary concerns—and the decision not to hire him in an alternative position—his lack of qualifications.

No evidence shows Defendant intended to abolish Plaintiff's position because of his age. On the contrary, the evidence establishes the elimination was the result of a thoughtful process by multiple participants for budgetary reasons. Due to the anticipation of the decline in property tax revenues and other financial concerns, department directors were directed to submit proposed departmental budgets with reductions of 5%. In accordance with this directive, the CIS Department Director recommended the elimination of the Computer Operator II position because the position's main responsibility—to physically install and remove computer backup tapes on a daily basis—was becoming unnecessary, as Clarke County was in the process of

---

[53] *Id.* (citation omitted).
[54] *Id.* (citation omitted).

digitizing its computer backup system so that electronically stored information would be automatically moved off site. The Director felt this elimination was the only realistic option without cutting services to an unacceptable level. Although the Mayor and the County Manager submitted budgets to the County Commission that did not eliminate the Computer Operator II position, the Commission ultimately adopted a FY13 budget that eliminated Plaintiff's position and several others.

As to Defendant's failure to rehire him, the evidence establishes Defendant's decision was based on the qualifications of the applicants. The ADEA "does not mandate that employers establish an interdepartmental transfer program during the course of an RIF, . . . or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course."[55] "Rather, the ADEA simply provides that a discharged employee who applies for a job []he is qualified for and which is available at the time of [his] termination must be considered for that job along with all other candidates, and cannot be denied the position based upon h[is] age."[56] The available Systems Analyst I and II positions in the CIS Department required knowledge and experience necessary to maintain, troubleshoot, and remediate software issues. As Plaintiff himself admitted, he had no experience, knowledge, or skills working with

---

[55] *Smith*, 352 F.3d at 1344 (citation omitted).
[56] *Id*. at 1344-45 (internal quotation marks and citation omitted).

software.[57] The persons Defendant hired to fill these positions not only held bachelor's degrees but also the necessary training and experience the jobs required. Similarly, the open position in the Department of Leisure Services required experience in that field. The woman Defendant hired to fill that position not only held a bachelor's degree but also had ten years of related experience. Plaintiff had no such experience.

Moreover, Plaintiff fails to establish Defendant had any discriminatory intent in not rehiring him. The record reflects no evidence Defendant consciously refused to consider retaining or relocating Plaintiff because of his age. On the contrary, the evidence shows Defendant aided Plaintiff in trying to find alternative employment. On June 5, 2012, Jeff Hale from the Human Resources Department sent an email identifying five employees, including Plaintiff, who were in need of alternative employment within the County because of medical circumstances or job abolishment, stating: "If you should see applications from them, or are contacted directly, please let me know so we can assist them as appropriate. As always, each would need to meet the minimum qualifications for any position of interest. In the meantime, if you know of openings in your Departments now or upcoming that might present a suitable opportunity for any of the above named, please let me know."[58] The evidence establishes Plaintiff did not meet the qualification requirements of the positions for which he applied.

---

[57] Pl. Depo., pp. 65-68
[58] Email from Jeffrey Hale dated June 5, 2012 [Doc. 31, p. 138].

While the Court is certainly sympathetic to Plaintiff's situation, there is simply no evidence showing the elimination of his position or the decision not to hire him was based on his age. Indeed, the evidence shows Defendant's decisions were legitimately based on financial concerns over the FY13 Clarke County budget and the qualification requirements for the open positions. Unfortunately, the reality of the rapidly changing and developing technological world we live in is that certain job positions become unnecessary. Local governments must make difficult decisions based on limited budgets, and unfortunately Plaintiff was a casualty in that decision-making process because his primary responsibility—installing and replacing backup tapes for electronically stored information—was being replaced by a digitized and automated system, and he did not have the qualifications or experience necessary for the open positions requiring more advanced technological skills.  This Court does not sit as a "super-personnel department," and it does not review the wisdom of an employer's business decisions.[59]  "We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."[60] There is no evidence from which a reasonable factfinder could find such a discriminatory animus here.

---

[59] *See Chapman*, 229 F.3d at 1030 (internal quotation marks and citation omitted).
[60] *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 27] is **GRANTED**.

**SO ORDERED,** this 26th day of August, 2016.

>                             S/ C. Ashley Royal
>                             C. ASHLEY ROYAL
>                             UNITED STATES DISTRICT JUDGE

SSH